VANDEMARK, d.b.a. Vandemark Company, Appellee,

v.

BROWN, Registrar, Appellant.

[Cite as *Vandemark v. Brown* (1993), 86 Ohio App.3d 170.]

Court of Appeals of Ohio,
Clermont County.

No. CA92–09–088.

Decided Feb. 1, 1993.

*West, West & Yelton* and *Paul R. Yelton,* for appellee.

*Lee Fisher,* Attorney General, and *David B. Clouston,* Assistant Attorney General, for appellant.

JONES, Presiding Judge.

Defendant-appellant, Mitchell J. Brown, Registrar, Motor Vehicle Salvage Dealers Board ("the board"), Ohio Department of Transportation, appeals a decision of the Clermont County Court of Common Pleas vacating the board's revocation of the motor vehicle salvage dealer's license held by plaintiff-appellee, Greg Vandemark.

Appellee owns and operates a motor vehicle salvage facility bordered on the north by State Route 125 in Amelia, Ohio. The Holly Town Mobile Home Park ("Holly Town") overlooks the facility from a hill on the west side of the property.

On August 28, 1989 and February 7, 1990, a board representative inspected appellee's salvage facility. The representative determined that the facility was not shielded from "ordinary view" on its north and west sides as required by R.C. 4738.11 and Ohio Adm.Code 4501:1–4–04. The board then issued an adjudication order on October 1, 1990 which required appellee to comply with the shielding requirements within ninety days.

A board representative inspected appellee's facility again on January 9, 1991, and concluded that the facility was properly shielded on its north side. However, the representative found that the facility remained improperly shielded on its west side. As a result, the board issued an adjudication order revoking appellee's motor vehicle salvage dealer's license.

Pursuant to R.C. 119.12, appellee appealed the revocation order to the Clermont County Court of Common Pleas. The court held that the board's finding of improper shielding on the west side was not supported by reliable, substantial and probative evidence. In the court's opinion, the residents of Holly Town were not "ordinary viewers." Accordingly, the court vacated the revocation order.

On appeal, the board presents three interrelated assignments of error:

Assignment of Error No. 1:

"The Clermont County Court of Common Pleas erred when it did not recognize the authority of the Motor Vehicle Salvage Dealers Licensing Board to impose more stringent shielding requirements than those required under Chapter 4737 of the Ohio Revised Code for junkyards, and those required by the Highway Beautification Act, and thus abused its discretion."

Assignment of Error No. 2:

"The Clermont County Court of Common Pleas erred in not following the Ohio Supreme Court's holding in *State vs. Buckley* and thus abused its discretion."

Assignment of Error No. 3:

"The Clermont County Court of Common Pleas erred in holding that the adjudication order of the Motor Vehicle Salvage Dealers Board was in error, not in accordance with law, and that there was insufficient evidence, and that the order was not supported by reliable, substantial, and probative evidence, and thus abused its discretion."

When reviewing a decision of the court of common pleas which addresses an administrative appeal based upon the weight of the evidence, this court's role

is to determine whether the court of common pleas abused its discretion. *Angelkovski v. Buckeye Potato Chips Co.* (1983), 11 Ohio App.3d 159, 11 OBR 242, 463 N.E.2d 1280. An abuse of discretion is more than an error of judgment; it implies a decision without a reasonable basis which is clearly wrong. *Id.* at 162, 11 OBR at 244, 463 N.E.2d at 1283. This standard guides our inquiry on each of the board's assignments of error.

■ In its first assignment, the board relies on R.C. 4738.11, Ohio Adm.Code 4501:1–4–04, and the Highway Beautification Act, Section 136, Title 23, U.S.Code ("the Act"), and argues that it is authorized to require that appellee shield his facility from the view of Holly Town residents. Appellee's position is that these provisions only require the shielding of salvage facilities from nearby roadways, not from private property.

R.C. 4738.11 addresses the shielding rules for salvage facilities and states in pertinent part as follows:

"(A) The motor vehicle salvage dealer's licensing board shall adopt rules prescribing the physical characteristics of facilities used by motor vehicle salvage dealers, * * * which shall include requirements for fencing or otherwise screening the view of the facilities to at least the extent required for junkyards by sections 4737.07 and 4737.09 of the Revised Code. Such rules shall be consistent with the standards adopted by the director of transportation pursuant to the 'Highway Beautification Act of 1965,' * * *."

R.C. 4737.07 and 4737.09, the junkyard statutes referred to in R.C. 4738.11, require natural objects or a non-transparent fence to obscure the view of junkyards from nearby state or county highways, township roads, interstates, and primary highways. In addition, Ohio Adm.Code 4501:1–4–04, which regulates the characteristics of the facilities used by motor vehicle salvage dealers, requires fencing which "shield[s] the premises from ordinary view." Ohio Adm.Code 4501:1–4–04(A)(2)(b). Furthermore, the Act, also referred to in R.C. 4738.11, states in pertinent part as follows:

"(1) Nothing in this section shall prohibit a State from establishing standards imposing stricter limitations with respect to outdoor junkyards on the Federal-aid highway systems than those established under this section." Section 136(*l*), Title 23, U.S.Code.

In the Act, the term "junkyard" encompasses salvage facilities such as appellee's.

Again, the board interprets the above statutory and administrative authority as allowing it to require the shielding of a salvage facility from the view of private property such as Holly Town. The board's rationale is as follows: First, the board argues that since the "to at least the extent required for junkyards"

language contained in R.C. 4738.11 enables it to adopt stricter shielding rules for salvage yards, it may require the shielding of private property. Second, making a similar argument, the board relies on Section 136($l$) of the Act which allows a state to impose stricter shielding requirements than those in the Act. Third, the board contends that the "shield the premises from ordinary view" requirement contained in Ohio Adm.Code 4501:1–4–04(A)(2)(b) authorizes the shielding of private property because it was promulgated pursuant to R.C. 4738.11.

While we agree that R.C. 4738.11, the Act, and Ohio Adm.Code 4501:14–04 allow the board to promulgate rules and establish standards stricter than those in the state and federal junkyard shielding schemes, we do not agree that the board can require the shielding of private property under the guise of these provisions.

Regulations "should not be read in a vacuum but must be read with reference to the enabling statute under which they were enacted." *Smith v. Haney* (1980), 61 Ohio St.2d 46, 48, 15 O.O.3d 56, 57, 398 N.E.2d 797, 799. An overview of R.C. 4738.11, the enabling statute under which Ohio Adm.Code 4501:1–4–04 was enacted, and those provisions referred to therein clearly indicates that the "ordinary view" shielding requirement is intended to aesthetically preserve the view from nearby roadways, not the view from private property. R.C. 4737.07, which the board's shielding rules, at minimum, must follow, is phrased entirely in terms of obscuring the view from nearby roadways. For example, the definition of "fence" as used in R.C. 4737.07 is "a barrier" which "obscure[s] the junk from the ordinary view of persons passing upon those state, county, municipal, and township highways, roads and streets covered by sections 4737.05 to 4737.99 of the Revised Code." R.C. 4737.05(C). In addition, the purpose of the Act, which the General Assembly requires the board's rules to be consistent with, is "to protect the public investment in [the] highways, to promote the safety and recreational value of public travel, and to preserve natural beauty." Section 136(a), Title 23, U.S.Code. Nothing in the Act indicates an intention to protect private property. Furthermore, the Act and its accompanying regulations speak in terms of screening the view from the "main traveled way," [1] not the view from private property. See Section 136(b) and (c), Title 23, U.S.Code; Sections 751.3, 751.7(c), and 751.9(a)(1), Title 23, C.F.R.

We feel that the "ordinary view" requirement contained in Ohio Adm.Code 4501:1–4–04(A)(2)(b) must be read in conjunction with the above provisions. Thus, we hold that the term "ordinary view," for purposes of Section (A)(2)(b),

---

1. "Main traveled way" is defined in Section 751.7(c), Title 23, C.F.R.:

"Main traveled way. The traveled way of a highway on which through traffic is carried. In the case of a divided highway, the traveled way of each of the separated roadways for traffic in opposite directions is a main traveled way. It does not include such facilities as frontage roads, turning roadways, or parking areas."

contemplates only the view from the roadways specified by R.C. 4737.07 and the Act. Accordingly, the common pleas court did not abuse its discretion in determining that the board could not require appellee to shield his facility from the view of Holly Town. The board's first assignment of error is overruled.

In its second assignment of error, the board argues that the common pleas court improperly applied the case of *State v. Buckley* (1968), 16 Ohio St.2d 128, 45 O.O.2d 469, 243 N.E.2d 66. *Buckley* involved a junkyard which was not sufficiently shielded from a highway elevated above it. In *Buckley*, R.C. 4737.07 was one of the statutes at issue, which, again, applies to salvage facilities through R.C. 4738.11. The board relies on the following language in applying *Buckley*: "We read the statutes in question as requiring that the fence effectively and substantially hide the cars in the junk yard from the public view contemplated by the statute. No unevenness of terrain which makes this difficult or impossible excuses violation of the statutory requirement." *Buckley, supra,* at 133, 45 O.O.2d at 472, 243 N.E.2d at 70.

In its decision, the court below stated that *Buckley* "alluded to unevenness of terrain as a possible excuse for violation of statutory requirements; here the need for at least a twenty-foot high fence in this court's mind creates a virtual impossibility of compliance with the requirements." Although the lower court may have misinterpreted the language from *Buckley* quoted above, for the following reasons, *Buckley* does not require us to find for the board.

First, the above language from *Buckley*, contrary to the board's assertion, is not the holding of the case. The applicable portion of the court's holding is contained in paragraph two of the syllabus: "The statutory requirement, found in Sections 4737.05 and 4737.07, Revised Code, that junk be obscured from the ordinary view of persons passing upon state, county and township roads means that the junk must be entirely hidden from the view of *such passers-by* * * *." (Emphasis added.) Thus, the *Buckley* court equated "ordinary view" with the view of persons traveling on the roadways near junkyards. Second, the issue in *Buckley* was the constitutionality of the "junkyard statutes," not whether a salvage yard operator must screen his facility from the view of those living on adjacent private property. Third, and most important, *Buckley* involved an unobscured view from an elevated *highway*, not an elevated parcel of private property. We find nothing in the *Buckley* opinion which indicates that salvage yards must be screened from the view of private property.[2] The trial court's

2. The board suggests that the language "from the public view contemplated by the statute" requires the screening of private property. However, because we conclude that the view contemplated by R.C. 4738.11 and Ohio Adm.Code 4504:1–4–04(A)(2) is only the view from nearby roadways, we need not analyze that language further.

failure to interpret *Buckley* as the board does, therefore, was not an abuse of discretion and the board's second assignment of error is overruled.

In its final assignment of error, the board argues that the finding of the court of common pleas that the board's adjudication order was not supported by reliable, substantial, and probative evidence constituted an abuse of discretion. In its final inspection of appellee's facility, the board determined that the facility was properly shielded from the view of those traveling on State Route 125 but improperly shielded from the view of those living in Holly Town. Because we find that the board cannot require appellee to shield his salvage facility from the view of those living in Holly Town, the common pleas court correctly vacated the board's order on the basis of a lack of reliable, substantial, and probative evidence. The court properly interpreted the board's authority, thus, its decision does not amount to an abuse of discretion. The board's third assignment of error is overruled.

*Judgment affirmed.*

KOEHLER and WILLIAM W. YOUNG, JJ., concur.