OPINION
{¶ 1} Brian Culpepper appeals from his conviction in the Montgomery County Common Pleas Court of felonious assault.
 {¶ 2} Culpepper's conviction resulted from his striking Carla Blake in the face with his fist causing her to suffer a very serious facial injury. Culpepper and Blake gave conflicting versions at the trial of what happened on the day of the assault, October 31, 2000.
 {¶ 3} It is not disputed that shortly before Christmas 1999, Carla Blake permitted Culpepper to stay in her home because he had been evicted by his mother from his home. Ms. Blake did this at the request of her good friend, Daniel Cook, who was also a friend of Culpepper's. Culpepper stayed with Ms. Blake and her two sons, Evan and Allen, until late March 2000. In October, Ms. Blake discovered that Culpepper had left some items in her house and she called Culpepper and told him she would have Cook bring the items to him. (Tr. 73).
 {¶ 4} On October 31, 2000, Culpepper came to her home to retrieve his things despite her admonition to him that he was not welcome in her home. Evan answered the door and asked Culpepper to wait on the front porch. Instead Culpepper entered her home and an argument with Evan ensued which caught Ms. Blake's attention.
 {¶ 5} Ms. Blake demanded that Culpepper leave her home and when he refused she asked her son, Allen, to get her the telephone so she could call the police. When Allen gave her the telephone a shoving match ensued and Ms. Blake testified that Culpepper struck her twice in the face shattering the bone structure beneath her left eye causing her partial blindness. She testified that Culpepper then ran out of her house.
 {¶ 6} Evan Blake, age 15, corroborated his mother's testimony. He testified that his mother was very upset that Culpepper had entered her home and that she tried to call the police. He testified that he witnessed Culpepper strike his mother with his fist causing her injury.
 {¶ 7} Allen Blake, age 12, corroborated his mother's testimony also. Allen testified like his brother that during the argument his mother dropped the telephone and Evan picked it up. Allen said he saw Culpepper strike his mother in the face two or three times. (Tr. 55). He testified he never saw his mother strike Culpepper but he said he saw her pushing him. (Tr. 56) (Tr. 61).
 {¶ 8} Daniel Cook testified in Culpepper's defense. He testified that he was friends with both Culpepper and Ms. Blake. He said Ms. Blake called him to come to the hospital on the night of the incident. He said she told him she couldn't believe Culpepper would strike her. Cook said he asked Ms. Blake what she had done to Culpepper and she replied that she had struck Culpepper over the head with a telephone before he hit her. (Tr. 144).
 {¶ 9} Culpepper testified that he ran into Evan at Sinclair Community College on October 30, 2000 and learned that he still had a box of belongings at the Blake residence. He said he asked Evan if it would be all right if he came by the next day to pick up the box and Evan said they would be home late in the afternoon on October 31, 2000.
 {¶ 10} Culpepper said he went to the Blake's the next day and Evan let him in the house to recover his box. Culpepper said he was kneeling on the floor examining the box when Carla Blake entered Evan's room and screamed at him to leave the house. Culpepper said he picked up the box to leave when Carla Blake "smashed me in the corner." (Tr. 110). He said he got Ms. Blake off of him and attempted to leave when she knocked the box out of his hands. Culpepper testified that as he attempted to put his things back in the box, Ms. Blake struck him in the head with a telephone and he then turned and struck her on the face with his fist. Culpepper said he then got up to leave when Evan jumped on his back. On cross-examination, Culpepper admitted he did not get any treatment for the injury to his head.
 {¶ 11} In his first assignment, Culpepper contends his conviction is against the manifest weight of the evidence. He contends he proved by a preponderance of the evidence that he acted in self defense when he struck Ms. Blake with his fist. He contends that he demonstrated the defense by his testimony and that of Daniel Cook, Ms. Blake's "brother."
 {¶ 12} The State argues that the conviction is not against the manifest weight of the evidence because Carla Blake denied striking Culpepper with the telephone prior to his assault of her and her testimony was corroborated by her sons' trial testimony. Carla Blake also denied telling Daniel Cook that she struck the defendant with the telephone.
 {¶ 13} In reviewing a manifest weight argument, we must determine whether the jury lost its way and created a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. This discretionary power should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. State v.Thompkins (1997), 78 Ohio St.3d 380, 387 quoting State v. Martin (1983),20 Ohio App.3d 172, 175.
 {¶ 14} Although a weight-of-the-evidence argument permits a reviewing court to consider the credibility of witnesses, that review must nevertheless be tempered by the principle that weight and credibility questions are primarily for the trier of the fact. State v.DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. In State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288, this Court reasoned that: "[b]ecause the fact finder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the fact finder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the fact finder, who has seen and heard the witnesses."
 {¶ 15} Id. at 4. This standard for reviewing a manifest weight argument allows a court to "judge the credibility of opposing opinion testimony but not fact testimony, unless it is so incredible that it defies belief." City of Fairborn v. Boles (May 15, 1998), Greene App. No. 97-CA-110, at 3.
 {¶ 16} The facts are not in dispute that the defendant struck Ms. Blake and caused her serious physical injury. He claims he did so in self-defense, a defense he must prove by a preponderance of the evidence. R.C. 2901.05; State v. Martin (1986), 21 Ohio St.3d 91. In order to establish self-defense, the defendant must prove he was not at fault in creating the situation, he had reasonable grounds and/or honest belief he was in danger of bodily harm and his only means of protecting himself was by use of force not likely to cause death or great bodily harm. State v. Williford (1990), 49 Ohio St.3d 247. If the defendant used more force than reasonably necessary under the circumstances and if the force used is so greatly disproportionate to his apparent danger as to show an unreasonable purpose to injure than the defense of self-defense is unavailable. 4 OJI 411.35. This is the instruction which was given to the jury in this matter. (Tr. 196).
 {¶ 17} The jury may have chosen to simply disbelieve the defendant and Daniel Cook. The jury may have believed that Ms. Blake actually struck the defendant with the telephone but that the defendant's use of force was so disproportionate to the danger he faced as to show an unreasonable purpose to injure her on his part. In short, we cannot say the jury lost its way in finding that the defendant failed to meet his burden of proving the affirmative defense of self-defense. The first assignment is overruled.
 {¶ 18} In his second assignment, Culpepper argues that the trial court erred in imposing a sentence other than the minimum term allowed for the offense he committed. Culpepper argues that he had no criminal history of violence that would support a finding that he presented a danger to society as a whole. He contends that his offense was unplanned, unmotivated, and was a spur of the moment incident. Finally, he contends the trial court's findings under R.C. 2929.14 are not supported by the trial record.
 {¶ 19} The State argues that the trial court did not abuse its discretion in imposing the four year sentence upon the appellant. The State argues that the trial court engaged in the proper legal analysis in imposing the sentence upon the appellant. The State notes that the trial court found that the shortest prison term would demean the seriousness of the appellant's conduct and would not protect the public from future crime. The State also notes the trial court appropriately considered the seriousness and recidivism factors enumerated in R.C. 2929.12(B) thru (E).
 {¶ 20} In imposing sentence, the trial court noted the following: "The Court has also independently reviewed the Sentencing Factors under2929.12 with regard to the factors that make this a more serious offense. The Court finds that the victim of this offense has suffered serious physical, psychological and econom — economic harm as a result of — of this offense. (See 2929.12(B)(2)). "The Court also finds that your relationship with this victim has facilitated the offense and that there were children present at the time of the assault. (See2929.12(B)(6) and (9)). "The Court finds no factors which make this a less serious offense under 2929.12(C). "With regard to recidivism — recidivism factors under 2929.12(D), evidently, at — at the time of trial and I think at the time of the Pre-Sentence Investigation, you appeared, at least to the Court, and evidently to the Probation Department, not to express or show any remorse, but to continue to make excuses for your conduct in — in regard to this matter. (See2929.12(D)(5)). The Court will note, though, that today you have — you appear to show some genuine remorse." (Sent. Tr. 5-6).
 {¶ 21} R.C. 2929.14(B) provides that a trial court is permitted to impose a sentence greater than the minimum upon a defendant who, like Culpepper, has not previously served a prison term, if the court "finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others." In doing so, the trial court need not provide its underlying reasons for finding that a prison term greater than the minimum should be imposed. State v. Edmonson (1999),86 Ohio St.3d 324, 715 N.E.2d 131, syllabus. Rather, the record must simply reflect that the trial court engaged in the necessary statutory analysis and determined that one or both of the exceptions under R.C.2929.14(B) warrant a sentence greater than the minimum. Id. at 326.
 {¶ 22} This record does not support appellant's argument that the trial court abused its discretion in imposing the four year sentence upon appellant. Although Culpepper has no significant criminal history, he caused a very significant permanent injury to the victim's face. The punches thrown by Culpepper shattered the victim's facial bone and rendered her partially blind in her left eye. The trial court's finding a minimum sentence would demean the seriousness of Culpepper's conduct is certainly reasonable and not reflective of an abuse of judicial discretion. The trial court imposed a sentence in the middle of the sentencing range for felonious assault. The trial court also appropriately considered the seriousness and recidivism factors set out in R.C. 2929.12. The second assignment of error must be overruled.
 {¶ 23} In his third assignment, Culpepper contends the trial court erred in not dismissing the indictment for the State's failure to bring him to trial within the time limits set forth in R.C. 2945.71 et seq. Culpepper contends he was tried 94 days after he turned himself into the police station. Culpepper concedes he did not file a pre-trial motion to dismiss the indictment on speedy trial grounds. We and other courts in Ohio have held that the statutory speedy trial provisions are not self-executing, but that these provisions must be asserted by a defendant in a timely manner to avoid such right being considered waived. See,State v. Dumas (1990), 86 Ohio App.3d 174, 176; City of Worthington v.Ogilby (1982), 8 Ohio App.3d 25, 27; State v. Wells (January 19, 1994), Greene App. No. 92-CA-122. Accordingly, the appellant's third assignment is likewise overruled.
 {¶ 24} The judgment of the trial court will be Affirmed.
FAIN, P.J., and YOUNG, J., concur.